# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Venture Bank,                                        Civil No. 13-3259 (DWF)

       Appellant and Cross-Appellee,

v.                                                           **MEMORANDUM**
                                                     **OPINION AND ORDER**

Howard L. Lapides and Mary Holter-Lapides,

       Appellees and Cross-Appellants.

---

Gregory M. Erickson, Esq., and James R. Magnuson, Esq., Mohrman, Kaardal & Erickson, P.A., counsel for Appellant and Cross-Appellee Venture Bank.

Manly A. Zimmerman, Esq., Zimmerman & Bix, Ltd., and Scott M. Hoffman, Esq., Attorney at Law, counsel for Appellee and Cross-Appellant Howard L. Lapides.

Scott M. Hoffman, Esq., Attorney at Law, counsel for Appellee and Cross-Appellant Mary Holter-Lapides.

---

# INTRODUCTION

This matter is before the Court on appeal by Appellant Venture Bank and cross-appeal by Appellees Howard L. Lapides ("Lapides") and Mary Holter-Lapides ("Holter-Lapides") (together, "the Lapideses") from the Bankruptcy Court's October 11, 2013 Order and Judgment. (Doc. No. 1.) For the reasons discussed below, the Court affirms in part and modifies in part the ruling of the Bankruptcy Court.

## BACKGROUND

### I.     Factual Background

On August 30, 2007, Lapides, acting as President of HL Seafood, Inc., executed a

$400,000 promissory note in favor of Venture Bank.  (Doc. No. 17, Appellant App. Pt. 1,

at 1-3.)  The promissory note was secured by a mortgage on the Lapideses's home, which

was in third position behind the original two home mortgages held by Bank of America

and Citizens Bank.  (*Id.* at 2.)  On March 25, 2008, Lapides and his wife, Holter-Lapides,

executed a $400,000 promissory note in favor of Venture Bank, which paid off the

August 30, 2007 promissory note.  (*Id.* at 4-6.)  On September 2, 2008 and November 2,

2008, the parties executed Change in Terms Agreements to extend the maturity date and

adjust the credit amount and interest rate of the March 25, 2008 promissory note.  (*Id.* at

27-29, 30-32.)  On February 12, 2009, the Lapideses executed a new $357,456.35

promissory note in favor of Venture Bank, which was subsequently refinanced in a

June 30, 2009 promissory note.  (*Id.* at 33-35, 36-37.)

Lapides filed for Chapter 7 Bankruptcy on August 11, 2009.  (*Id.* at 74.)  On

October 12, 2009, Lapides and his attorney met with Venture Bank President Michael

Zenk and Venture Bank Loan Officer Nathan Urfer to discuss Lapides's desire to keep

his home and have Venture Bank refinance all three mortgages on his home, including

the Bank of America and Citizens Bank mortgages.  (Doc. No. 19, Appellant App. Pt. 5,

at 618, 804.)  On November 9, 2009, the parties signed a debt reaffirmation agreement

based on their discussions at the October 12, 2009 meeting, but Venture Bank ultimately

did not refinance the three mortgages on the Lapideses's home.  (Doc. No. 19, Appellant

App. Pt. 4, at 473-74.)  On November 16, 2009, Lapides was discharged from

bankruptcy.  (*Id.* at 476.)  On May 9, 2010 and November 9, 2010, the parties executed

Change in Terms Agreements ("Post-Discharge Agreements") related to the

June 30, 2009 promissory note.  (*Id.* at 491-93, 527-29.)  In April 2011, Lapides stopped

making payments to Venture Bank under the Post-Discharge Agreements after he lost his

job.  (*Id.* at 547.)  On December 15, 2011, Citizens Bank foreclosed on its mortgage and

the Lapideses's home was sold at public sale.  (Doc. No. 17, Appellant App. Pt. 1, at 51.)

## II.    Procedural History

On July 15, 2011, Venture Bank sued the Lapideses in Minnesota state court

seeking the following relief:  (I) judgment against Holter-Lapides for the outstanding

balance under the June 30, 2009 promissory note; (II) foreclosure of a mortgage that

served as collateral for the promissory note; and (III) declaratory relief related to the

Post-Discharge Agreements.  (Doc. No. 19, Appellant App. Pt. 5, at 868-78.)  The

Lapideses counter-claimed that the suit violated the discharge injunction under 11 U.S.C.

§ 524(a)(2) and removed the complaint to Bankruptcy Court.  (*Id.* at 879-84, 1074-76.)

The Bankruptcy Court remanded Counts I and II of the complaint to the state court.

(Doc. No. 5.)

On October 11, 2013, the Bankruptcy Court entered judgment in favor of the

Lapideses on Count III of the complaint, concluding that there was "[n]o new or different

consideration" and no mutual agreement for either of the Post-Discharge Agreements to

constitute enforceable contracts.  (Doc. No. 5 at 11.)  The Bankruptcy Court also

determined that all of Lapides's payments after the May 9, 2010 Post-Discharge

3

Agreement were involuntary, but that all payments prior to that date were voluntary.  (*Id.* at 16-17.)  The Bankruptcy Court awarded Lapides $35,000 in actual damages for violation of the discharge injunction as well as attorney fees.  (*Id.* at 20.)

On November 26, 2013, Venture Bank appealed to the United States District Court for the District of Minnesota.  (Doc. No. 1.)  The Lapideses cross-appealed.  (*Id.*)  On December 4, 2013, Venture Bank sought certification to the Eighth Circuit Court of Appeals.  (Doc. No. 9.)  In denying Venture Bank's request for certification, the District Court ruled that the issue on appeal—"whether the Bankruptcy Court erred in determining that there was no consideration for the post-discharge agreements between Venture Bank and debtor Howard Lapides"—is a factual, not a legal issue, and thus is not appropriately certified to the Court of Appeals.  (Doc. No. 16 at 2.)

Appellant seeks review of the Bankruptcy Court's finding that the Lapideses's post-discharge promises to remain liable to Venture Bank on a debt discharged in a previous bankruptcy proceeding were unenforceable and that Lapides's post-discharge payments to Venture Bank were involuntary.  Appellees seek review of the Bankruptcy Court's calculation of damages and determination that Lapides's pre-discharge payments were voluntary.

## DISCUSSION

## I.      Standard of Review

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations *de novo* and findings of fact for clear error."  *Fix v. First State Bank of Roscoe*, 559 F.3d

803, 808 (8th Cir. 2009); *see also In re Falcon Prods., Inc.*, 497 F.3d 838, 840-41 (8th

Cir. 2007).  Pursuant to the Federal Rules of Bankruptcy Procedure, "[f]indings of

fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to

the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R.

Bankr. P. 8013.  The District Court may affirm, reverse, or modify the Bankruptcy

Court's ruling or remand the case for further proceedings.  *Id.*

## II.    Consideration for the Post-Discharge Agreements

Under well-established contract principles, formation of a contract requires an

offer, acceptance, and consideration.  *See Taxi Connection v. Dakota, Minn. & E. R.R.*

*Corp.*, 513 F.3d 823, 826 (8th Cir. 2008).  "Consideration is something of value

exchanged for a performance or promise of performance." *In re MJK Clearing, Inc.*, 408

F.3d 512, 515 (8th Cir. 2005).  Lack of consideration is a defect in the formation of a

contract; such a contract is void and its execution has no legal effect.  *See id.*

The Bankruptcy Court ruled that the May 9, 2010 and November 9, 2010

Post-Discharge Agreements lacked consideration and therefore were not valid,

enforceable contracts.[1]  The Bankruptcy Court concluded that the Lapideses had no

obligation to Venture Bank under the Post-Discharge Agreements without reference to

the pre-discharge loan agreements between the parties.

---

[1]    The Bankruptcy Court's ruling that the Post-Discharge Agreements do not comply
with 11 U.S.C. § 524(c)'s requirements is uncontested.  At issue on appeal is whether the
Post-Discharge Agreements might be valid post-discharge contracts supported by
consideration.

Venture Bank challenges the Bankruptcy Court's determination that the Post-Discharge Agreements were invalid, unenforceable contracts.  Venture Bank contends that the Post-Discharge Agreements were new obligations supported by new consideration and not subject to Lapides's prior discharge in bankruptcy.[2]  In support of this argument, Venture Bank argues that its willingness to defer the foreclosure of its third mortgage on Lapides's home and deficiency collection efforts against Holter-Lapides constitutes consideration for the Post-Discharge Agreements.  Specifically, Venture Bank argues that Lapides received "dollar-for-dollar consideration" because Venture Bank "allowed him to remain in his home and protect his wife from a deficiency judgment for years."  (Doc. No. 17 at 21-22.)  Venture Bank contends that under *In re Heirholzer*, 170 B.R. 938 (N.D. Ohio 1994), and its progeny, Venture Bank's forbearance from foreclosure constitutes adequate and independent consideration that supports a finding of valid Post-Discharge Agreements.

This Court concludes that it was not clear error for the Bankruptcy Court to find that the Post-Discharge Agreements between Venture Bank and the Lapideses lacked the consideration necessary to form a valid contract because no new or different consideration, either by way of funds or forbearance, was identified for either of the Post-Discharge Agreements.  First, no facts in the record support a finding that there was

---

[2]     Appellant also contends that the Bankruptcy Court committed clear error when the Court held that the Post-Discharge Agreements lacked the element of mutual assent. However, because the Court finds that the Post-Discharge Agreements lacked consideration, rendering the Post-Discharge Agreements invalid and unenforceable, the Court does not need to reach the issue of mutual assent.

any new monetary consideration given by Venture Bank under either of the Post-Discharge Agreements. The Post-Discharge Agreements state that the documents represent a renewal of an existing loan obligation, and both the loan amount and the terms are identical to the pre-discharged debt. (*See* Doc. No. 17, Appellant App. Pt. 1, at 41-46.) The only significant difference in terms was the reduction in monthly payments and the resulting extension of the repayment duration. (*See id.*) Therefore, at most, the Post-Discharge Agreements evidence an intent to pay a discharged debt.

Second, no facts show that forbearance was provided by Venture Bank under either of the Post-Discharge Agreements. Appellant's characterization of Venture Bank's forbearance of its foreclosure and collection rights in exchange for repayment of a discharged debt as "consideration" is misleading. If Venture Bank had foreclosed on its third position mortgage immediately after Lapides filed for bankruptcy, Venture Bank would have owned the property subject to the first and second mortgages. (*See* Doc. No. 19, Appellant App. Pt. 5, at 841-42.) However, at the time of trial, the first and second mortgages left little, if any, equity for Venture Bank in its third position. (*See id.* at 675-76, 693-94.) In addition, Venture Bank gave up little, if any, equity by not enforcing collection efforts against Holter-Lapides because she had been unemployed for twenty years and owned no assets separate from her husband. (*See id.* at 680, 799, 805.) Such forbearance on the part of Venture Bank fails to constitute consideration.

Therefore, this Court concludes that the Bankruptcy Court did not commit clear error in finding that no facts supported the argument that new consideration rendered the

May 9, 2010 and November 9, 2010 Post-Discharge Agreements new contracts. *See Fix*, 559 F.3d at 808.

## III.   Voluntariness of the Payments

The Bankruptcy Code expressly permits a debtor to voluntarily repay any debt. 11 U.S.C. § 524(f) ("Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."); *see also In re Buckles*, 189 B.R. 752, 766 (Bankr. D. Minn. 1995) ("[V]oluntary payment is entirely permitted under the Bankruptcy Code."). Bankruptcy courts have defined the term "voluntary" as used in Section 524(f) applying an objective standard. *See DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1023 (8th Cir. 2002). This standard requires that payments be free from creditor influence or inducement, regardless of the debtor's motivations. *Id.*

### A.   Pre-Discharge Payments

The Bankruptcy Court found that Lapides's payments made prior to the May 9, 2010 Post-Discharge Agreement were voluntary. In support of this finding, the Bankruptcy Court emphasized two points. First, Lapides told Venture Bank that he was willing to pay $3,000 per month pending Venture Bank's refinancing of his mortgages. Second, the amount of $3,000 was suggested by Lapides and was not the subject of the Post-Discharge Agreements.

Lapides insists that his pre-discharge payments were involuntary because Venture Bank requested that he make the payments at the October 12, 2009 meeting and subsequently sent him two follow-up e-mails regarding the payments. Lapides also contends that the Bankruptcy Court improperly applied a subjective, rather than

objective, standard when the Court concluded that his payments prior to May 9, 2010 were voluntary.

This Court is unpersuaded by Lapides's arguments. Here, the record amply supports a finding that Venture Bank did not coerce or induce Lapides to make the pre-discharge payments. Lapides testified that he requested the October 2009 meeting with Venture Bank to discuss a potential refinancing agreement. At the meeting, Lapides himself proposed the $3,000 monthly payments, in the presence of his legal counsel. It is undisputed that Venture Bank agreed to those payment terms. In light of the record, the Bankruptcy Court's finding that Lapides's pre-discharge payments were voluntary was not clearly erroneous. *See Fix*, 559 F.3d at 808.

### B.    Post-Discharge Payments

The Bankruptcy Court found that Lapides's payments of $3,500 under the Post-Discharge Agreements were involuntary. The Court concluded that "[t]he bank's communications and post-petition conduct were designed to obtain payments and enforce the debt against the Defendant." (Doc. No. 17, Appellant App. Pt. 1, at 16.)

Venture Bank contends the Bankruptcy Court erroneously concluded that Lapides's post-discharge payments were involuntary within the meaning of Section 524(f). First, Venture Bank argues that Lapides's trial testimony that the payments were made voluntarily conclusively demonstrates the voluntariness of his payments. Second, Venture Bank contends that the Eighth Circuit's ruling in *Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1023 (8th Cir. 2002) supports a finding that Lapides's payments were voluntary because he initiated contact with Venture Bank to

secure a new refinancing agreement to avoid foreclosure on his home.  Under *Dubois*,

Venture Bank argues that expressing an intent to foreclose on a mortgage, pursuing a

deficiency judgment, or refusing to enter into a refinance transaction do not constitute

coercion.  (*See* Doc. No. 17 at 28-29.)

This Court finds that the Bankruptcy Court did not commit clear error in

determining that the facts show that the post-discharge payments were involuntary.  The

record supports a finding that, although Lapides initiated contact with Venture Bank to

obtain a refinancing agreement after the bankruptcy discharge, Venture Bank's

subsequent actions rendered the payments involuntary.  First, Lapides testified at trial that

Venture Bank Vice President and Loan Officer Nathan Urfer ("Urfer") called him on

several occasions seeking to collect payments.  *See, e.g.*, *In re Armstead*, No. 96-10592,

1997 WL 860677, at *1, 7 (Bankr. E.D. Pa. Nov. 7, 1997) (finding that the creditor's

monthly telephone calls to the debtor to collect a discharged debt contributed to rendering

the debtor's payments involuntary).  Second, Venture Bank sent Lapides a series of

e-mails to pressure him for monthly payments as well as extra principal payments.[3]  *See,*

---

[3]     On December 22, 2009, Venture Bank President Mike Zank ("Zank") e-mailed
Lapides stating, "[y]ou are presently past due on the present loan payment of $3,000.
Obviously the payment to Venture Bank is not a priority to you."  (Doc. No. 19,
Appellant App. Pt. 4, at 480.)  On December 30, 2009, Urfer e-mailed Lapides "to
confirm that the remaining portion of the December payment will be made today or
tomorrow."  (*Id.* at 485.)  On April 14, 2010, Urfer asked Lapides "to add some
additional to Venture Bank so that we can catch up on the accrued interest?"  (*Id.* at 489.)
On July 1, 2010, Urfer again asked, "[a]ny extra principal?"  (Doc. No. 17, Appellant
App. Pt. 2, at 266.)  On August 30, 2010, Urfer wrote, "[e]verything you can do in regard
to additional principal is important."  (*Id.* at 267.)  On October 28, 2010, Urfer wrote,
(Footnote Continued on Next Page)

*e.g.*, *In re Watkins*, 240 B.R. 558, 674, 678 (Bankr. E.D.N.Y. 1999) (determining that the debtors did not voluntarily repay a discharged debt after the creditor sent numerous letters to the debtors with "take-it-or-leave-it" terms).  Moreover, these efforts to pressure Lapides into making payments to Venture Bank were documented in Venture Bank's internal documents.  (*See, e.g.*, Doc. No. 18, Appellant App. Pt. 3, at 443 (Memorandum from Urfer to Officer Loan Committee stating, "I continue to keep the pressure on Howard."); *id.* at 438-39 (Marginal & Substandard Loan Improvement Workout Plan itemizing "ongoing" requirement to "[k]eep the pressure on the customer for principal reductions."))  Therefore, the Bankruptcy Court did not commit clear error in finding that the facts show that Lapides's post-discharge payments were involuntary.  *See Fix*, 559 F.3d at 808.

## IV.    Amount of Damages

The Bankruptcy Court calculated Lapides's actual damages relating to the discharge injunction violation by multiplying ten months of payments between June 2010

---

(Footnote Continued From Previous Page)

"[j]ustifying your cash flow is going to be important for us when we look at refinancing your mortgage."  (*Id.* at 158-59.)  On November 16, 2010, Urfer stated that he "need[ed] to collect a check to bring interest current to today, $1,091.33."  (*Id.* at 268.)  On January 27, 2011, Urfer asked, "[d]id you get your bonus?"  (*Id.* at 281.)  On February 1, 2011, Urfer wrote, "[d]on't forget the payment is due this week."  (Doc. No. 19, Appellant App. Pt. 4, at 536.)  On February 2, 2011, Urfer asked "[a]ny extra principal to throw at it?" (*Id.* at 537.)  On February 28, 2011, Urfer asked whether Lapides had any update on his bonus.  (Doc. No. 17, Appellant App. Pt. 2, at 283.)

and April 2011 by the amount of $3,500 contained in the Post-Discharge Agreements, for a total of $35,000. (Doc. No. 5 at 20.)

On cross-appeal, the Lapideses argue that the Bankruptcy Court "committed clear error by miscalculating the damages and failing to acknowledge the uncontroverted testimony that Lapides made his final payment in May 2011 which would result in damages of $3,500 for twelve months (June 2010 through May 2011), not ten months." (Doc. No. 20 at 19.)

The Court finds that the Bankruptcy Court's award of damages is clearly erroneous. The Bankruptcy Court used the correct formula to determine damages: the payment amount contained in the Post-Discharge Agreements multiplied by the number of monthly payments after discharge. However, in applying this formula, the Court inadvertently miscalculated the applicable amount of time. The record establishes that a payment was made for May 2011. (*See, e.g.*, Doc. No. 19, Appellant App. Pt. 5, at 822; Doc. No. 19, Appellant App. Pt. 4, at 547.) Assuming a June 2010 starting date, the number of months between those two dates was twelve months, yet the Bankruptcy Court used the period of ten months. The Court simply miscalculated the period of time and, thus, miscalculated the amount of damages. The resulting amount of damages is clearly erroneous and should be increased accordingly. The Court therefore modifies the Bankruptcy Court's Order award of $35,000 in damages to increase the amount of damages to $42,000.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.      Appellant Venture Bank's Appeal (Doc. No. [1]) is **DENIED.**

2.      Cross-Appellant Howard L. Lapides and Mary Holter-Lapides

Cross-Appeal (Doc. No. [1]) is **DENIED IN PART and GRANTED IN PART** as

follows:

        a.   Damages are modified from $35,000 to $42,000.

3.      The Bankruptcy Court's October 11, 2013 Order for Judgment (Doc.

No. [5-2]) is **AFFIRMED IN PART and MODIFIED AS TO DAMAGES.**

    **LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  August 29, 2014                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge